```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WALLESCA PENZ,                                       :
                            Plaintiff,               :
                                                     :   OPINION AND ORDER
v.                                                   :
                                                     :   21 CV 005 (VB)
SUPERINDENDENT LEROY FIELDS,                         :
                            Defendant.               :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Wallesca Penz brings this action pursuant to 42 U.S.C. § 1983 against defendant Leroy Fields, alleging violations of her constitutional right to access the courts and her Fourteenth Amendment right to be free from discrimination as a public employee.

Now pending is defendant's motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. #19).

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

Plaintiff worked as a correction officer at Fishkill Correctional Facility ("Fishkill"), where defendant Leroy Fields was, at all times relevant to this action, the superintendent.

In June 2018, plaintiff filed suit in this Court against Fishkill Lieutenant Al Washer, alleging he sexually harassed her.  See generally Penz v. Washer, 2019 WL 1922040, at *1 (S.D.N.Y. Apr. 29, 2019).  Plaintiff alleges she filed suit against Washer after "years of

1

complaining about his conduct to superiors at [Fishkill]" and "repeated requests" to defendant for help. (Doc. #18 ("Am. Compl.") ¶¶ 4, 6). According to plaintiff, defendant "took no steps" to investigate or punish Washer for his alleged harassment. (Id. ¶ 6).

Plaintiff alleges an inmate attacked her on February 7, 2019, while she was on duty at Fishkill, causing her to suffer a concussion, and that she was out of work for six months on full salary.

Plaintiff claims her doctor cleared her to return to work "light duty" in July 2019. (Am. Compl. ¶ 11). However, she contends defendant refused to allow her to return to work and, as a result, she received half pay starting in August 2019. Plaintiff also alleges defendant allowed "other similarly situated correction[ ] officers who had suffered work-related injuries," but who had not filed lawsuits charging sexual harassment by superior officers, to return to work on light duty. (Id. ¶ 12). Namely, plaintiff claims defendant permitted Correction Officer Feijoo, who suffered disabling back, shoulder, and knee injuries from a similar inmate attack, but who never filed a gender-discrimination lawsuit, to return to work light duty after five months and full duty six weeks later.

Plaintiff claims that, in or around April 2020, two doctors cleared her to return to work full duty effective June 1, 2020.

Plaintiff alleges she wrote to defendant on May 20, 2020, to explain she was cleared to return to work light duty, to inform him of her pending lawsuit against Washer, and to request that she be separated from Washer and another officer when she returned to work. She further alleges she was provided documentation from Fishkill on May 21, 2020, which reflected plaintiff "was set to return to work light duty on June 1, 2020." (Am. Compl. ¶ 18). However, according to plaintiff, rather than permitting her to return to work, defendant arranged for plaintiff to be

examined by Employee Health Services ("EHS").  Plaintiff asserts this examination was "irregular and not routine[ ]" for employees who offer medical evidence of their fitness to return to work.  (Id. ¶ 21).  Ultimately, plaintiff contends scheduling this examination was "a means of delaying, and erecting an obstacle to, [her] return to work."  (Id. ¶ 22).

According to plaintiff, she appeared for her EHS examination on June 30, 2020, during which she explained she was no longer suffering symptoms from the attack.  However, on July 20, 2020, plaintiff was informed that the EHS doctor who examined her declared she was unfit for duty.  Plaintiff was not provided any further explanation.  She alleges the "mere arrangement" of the EHS exam was a "signal[ ]" from defendant to EHS that defendant did not want plaintiff to be medically cleared to return to work.  (Am. Compl. ¶ 22).

Next, plaintiff alleges an orthopedist examined her for the Workers' Compensation Board on July 23, 2020.  The orthopedist recommended plaintiff receive a functional capacity evaluation to determine whether she could resume regular duties, and he "noted that plaintiff would be able to resume full-time employment on October 23, 2020."  (Am. Compl. ¶¶ 32–33, 35).

Plaintiff alleges defendant never referred her for the recommended evaluation.  Instead, on October 21, 2020, defendant denied plaintiff's request to return to work either light or full duty and removed plaintiff from payroll.

Plaintiff contends defendant's string of decisions, beginning with the decision to deny her request to return to work light duty in July 2019, and ending with the decision to remove plaintiff from payroll on October 21, 2020, was retaliation for initiating and prosecuting her 2018 lawsuit against Washer.

Plaintiff asserts two causes of action pursuant to Section 1983.  First, plaintiff alleges defendant violated her constitutional right to access the courts by retaliating against her for initiating and prosecuting her suit against Washer.  Second, she claims defendant violated her Fourteenth Amendment right to be free from workplace discrimination by retaliating against her for complaining of gender-based discrimination.[1]  Plaintiff seeks compensatory and punitive damages, as well as an order of reinstatement to her position at Fishkill.

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[1]    Although the amended complaint suggests plaintiff is asserting a First Amendment retaliation claim, in opposing the motion to dismiss plaintiff clarifies she is only asserting a Fourteenth Amendment retaliation claim.  (Doc. #22 ("Pl. Opp.") at 7 & n.1).

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In addition, the Court may consider materials subject to judicial notice, including court filings in other litigation, not for the "truth of their contents" but for the fact that those filings were made and that other litigation exists. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (collecting cases).

II. Access-to-Courts Claim

Defendant argues plaintiff fails to state a claim for denial of access to the courts because she does not allege any actual injury with respect to her suit against Washer.[3]

The Court agrees.

A. Applicable Law

"The Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment." Raffaele v. City of New York, 144 F. Supp. 3d 365, 374 (E.D.N.Y.

---

[3]     Although the requirement that a plaintiff allege "actual injury" to state an access-to-courts claim "derives ultimately from the doctrine of standing," Lewis v. Casey, 518 U.S. 343, 349 (1996), a motion to dismiss an access-to-courts claim for lack of "actual injury" is properly construed as a Rule 12(b)(6) motion. See generally Davis v. Goord, 320 F.3d 346 (2d Cir. 2003).

2015).  There are two types of claims arising from denial of this right:  "forward-looking" claims and "backward-looking" claims.  Sousa v. Marquez, 702 F.3d 124, 127–28 (2d Cir. 2012).

"Forward-looking" claims include claims "that systemic official action frustrated [a plaintiff's] ability to file a suit."  Sousa v. Marquez, 702 F.3d at 127.  In contrast, "backward-looking" claims are claims that a lawsuit "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future."  Id. at 127–28.

To state a backward-looking claim, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," Davis v. Goord, 320 F.3d at 351, and that those actions caused plaintiff to suffer "actual injury."  Lewis v. Casey, 518 U.S. at 349.

To establish "actual injury," a plaintiff must allege defendants hindered her efforts to pursue a nonfrivolous legal claim.  See Amaker v. Haponik, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).  For example, a plaintiff might allege "the loss or inadequate settlement of a meritorious case, or the loss of an opportunity to seek some particular order of relief."  Christopher v. Harbury, 536 U.S. 403, 413–14 (2002).  "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts."  Amaker v. Haponik, 1999 WL 76798, at *3.

B.   Application

Plaintiff asserts a "backward-looking" access-to-courts claim.  In her opposition to the motion to dismiss, she argues defendant's failure to investigate her complaints about Washer "depriv[ed] her of potentially valuable evidence to support her claim of sexual harassment."  (Pl. Opp. at 6).  She further contends defendant's retaliatory conduct "ha[d] a chilling effect on witnesses," which "prevent[ed] material evidence from being developed at trial."  (Id. at 7).

6

First, these arguments are not supported by allegations in the amended complaint. "Conclusory assertions in a memorandum of law are not a substitute for plausible allegations in a complaint." Associated Press v. All Headline News Corp., 608 F. Supp. 2d 454, 464 (S.D.N.Y. 2009). As a result, plaintiff has not stated an access-to-courts claim. See id.

Second, even if these statements had been alleged in her complaint rather than argued in her brief, plaintiff's claim would not survive a motion to dismiss. General statements that a defendant's conduct hindered a plaintiff's pending lawsuit, absent any factual support, are insufficient to sustain an access-to-courts claim. Oliva v. Town of Greece, 630 F. App'x 43, 45–46 (2d Cir. 2015) (summary order) ("In short, the Plaintiffs have failed to plead facts sufficient to suggest that, insofar as they have failed to recover adequate damages on their hypothetical or actual wrongful death suits, that failure may be attributed to any acts or omissions of the Defendants. As such, they have not successfully set forth a necessary component of an access claim: injury caused by the Defendants' conduct.").

Accordingly, plaintiff's access-to-courts claim must be dismissed.

III. Fourteenth Amendment Retaliation Claim

Defendant contends plaintiff fails to state a claim for Fourteenth Amendment retaliation because plaintiff does not plausibly allege a causal link between her protected activity and any adverse action taken against her.

The Court disagrees.

A. Applicable Law

"The Fourteenth Amendment provides public employees with the right to be free from discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). "Consequently, public employees aggrieved by discrimination in the terms of their employment

7

may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." Id.

The elements of a "retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 91. That is, for a retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege (i) defendants acted under color of state law, and (ii) took materially adverse action against plaintiff (iii) because she "complained of or otherwise opposed discrimination." See id.

To be "materially adverse," an "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Such actions are "not limited to [those] that affect the terms and conditions of employment." Id. at 64. That said, "actions that are trivial harms—i.e., those petty slights or minor annoyances that often take place at work and that all employees experience—are not materially adverse." Rivera v. Rochester Genesee Reg'l Trans. Auth., 743 F.3d 11, 25 (2d Cir. 2014). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 69; see, e.g., Sherman v. Fivesky, LLC, 2020 WL 2136227, at *16 (S.D.N.Y. May 5, 2020) (allegations that supervisor "spiked [plaintiff's] coffee with hot sauce" and his "conduct became more hostile" sufficient for court to infer materially adverse action at pleadings stage).

To properly allege causation, "the plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90–91 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)). This causal connection may be established "indirectly," that is, "by showing that the protected activity

was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015).

There is no "bright line . . . beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Littlejohn v. City of New York, 795 F.3d at 319. "Where there are longer gaps in time between protected activity and adverse employment action, the inference of causation may be inferred from the fact that the employer was waiting for the opportune time to retaliate." White v. City of Middletown, 45 F. Supp. 3d 195, 219 (D. Conn. 2014); accord Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013).

B.   Application

Defendant contends causation cannot be plausibly inferred here (i) because of the gap in time between plaintiff's protected activity and the alleged adverse actions taken against her, and (ii) because plaintiff's evidence of disparate treatment is insufficient.

The Court disagrees.

Plaintiff commenced her lawsuit against Washer in June 2018. She alleges she was attacked by an inmate on February 7, 2019, suffered injuries, and went on leave from work.

According to plaintiff, defendant began retaliating against her in July 2019 by refusing to allow her to return to work although she was medically cleared to do so. Then, in May 2020, defendant again refused to allow plaintiff to return to work although she was medically cleared to do so and instead referred her for an EHS examination. Next, in October 2020, although plaintiff's physician recommended plaintiff be referred for an evaluation and return to work, defendant did not refer her for an evaluation and instead removed her from payroll.

In other words, plaintiff alleges she commenced protected activity in June 2018 and retaliation began in July 2019, thirteen months later, while the lawsuit against Washer was pending. At the pleadings stage, a delay of several months between protected activity and retaliatory conduct can still give rise to an inference of a causal connection. See Kopchik v. Town of East Fishkill, 759 F. App'x 31, 35–36 (2d Cir. 2018) (summary order) (collecting cases). And here, plaintiff "alleges additional facts to plausibly suggest why [defendant] may have waited [thirteen] months." Id. at 36. For one, plaintiff was on medical leave from work starting in February 2019. And for another, plaintiff is a correction officer, and corrections departments "generally have well-defined procedures and labor union agreements which prevent management from taking arbitrary adverse employment actions against their employees." See Blanco v. Brogan, 620 F. Supp. 2d 546, 556–57 (S.D.N.Y. 2009). Taken together, the Court reasonably infers that defendant began retaliating against plaintiff at "the first available opportunity." Id. at 557.

Moreover, plaintiff alleges that Officer Feijoo, a "similarly situated" correction officer who was attacked by an inmate and suffered "disabling" injuries, was permitted to return to work on light duty after five months and then full duty six weeks later (Am. Compl. ¶¶ 12–14), whereas plaintiff was not permitted to return to work light or full duty after twenty months. This further supports an inference of causation. DeCintio v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987); see, e.g., Lowe v. Hous. Works, Inc., 2013 WL 2248757, at *10 (S.D.N.Y. May 15, 2013) (denying motion to dismiss retaliation claim with ten-month gap between protected activity and adverse employment action and considering that defendant treated similarly situated employees differently).

Accordingly, plaintiff's retaliation claim may proceed.

IV.    Qualified Immunity

    Defendant contends the amended complaint should be dismissed because he is entitled to qualified immunity.

    The Court disagrees.

    A.    Legal Standard

    Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996).  "Defendants bear the burden of establishing qualified immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

    "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion."  Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).  However, "a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if the facts supporting the defense appear on the face of the complaint."  Id.  "[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful."  Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order).  "For these reasons, a motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal."  Id.

B. <u>Analysis</u>

Defendant argues he is entitled to qualified immunity because plaintiff does not allege he violated a "clearly established" federal right and, even if she did, the facts alleged in the amended complaint demonstrate it was objectively reasonable for defendant to believe his conduct did not violate any such right.

First, as discussed above, plaintiff has plausibly alleged defendant violated a clearly established federal right, that is, her right to be free from workplace discrimination pursuant to the Fourteenth Amendment. See <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d at 80.

Second, whether it was objectively reasonable for defendant to, for example, refer plaintiff for an EHS examination or remove her from payroll, are questions inappropriate for determination on a motion to dismiss. See <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 230–31 (2d Cir. 2014) ("Whether there existed non-pretextual, non-discriminatory explanations for the defendants' employment decisions—a question as to which the defendants bear the burden of production—is not properly decided on a motion to dismiss for failure to state a claim.").

Accordingly, defendant is not entitled to qualified immunity at this stage of the case.

V. <u>Punitive Damages</u>

Defendant also argues plaintiff's demand for punitive damages should be dismissed because she does not allege evil motive or intent or callous indifference.

The Court disagrees.

Punitive damages may be available in an action under Section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983). Plaintiff alleges that, even though she was medically cleared to return to

work, defendant delayed her return to work and eventually removed her from payroll, and defendant did so to retaliate against her for pursuing a sexual harassment lawsuit against Washer. In other words, plaintiff "has alleged facts sufficient to support intentional conduct, exhibiting reckless or callous indifference to [plaintiff]'s constitutional rights." Hous. Works, Inc. v. Turner, 179 F. Supp. 2d 177, 209 (S.D.N.Y. 2001), aff'd sub nom. Hous. Works, Inc. v. Giuliani, 56 App'x 530 (2d Cir. 2003) (summary order).

Accordingly, the Court declines to dismiss plaintiff's demand for punitive damages.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendant's motion to dismiss plaintiff's access-to-courts claim is GRANTED and that claim is DISMISSED. Defendant's motion to dismiss is DENIED in all other respects.

Defendant's answer is due December 7, 2021.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion. (Doc. #19).

Dated: November 23, 2021
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge