UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WALLESCA PENZ,  :
                Plaintiff,  :
v.  :      **OPINION AND ORDER**
  :
  :      21 CV 5 (VB)
SUPERINTENDENT LEROY FIELDS,  :
                Defendant.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Wallesca Penz brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendant Superintendent Leroy Fields, alleging defendant violated her Fourteenth Amendment right to be free from gender-based discrimination as a public employee during her employment at Fishkill Correctional Facility ("Fishkill").

      Now pending is defendant's motion for summary judgment. (Doc. #47).

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.    Prior Lawsuit

      On June 5, 2018, plaintiff commenced an action in this Court against Fishkill Lieutenant Al Washer, alleging he sexually harassed her. See generally Penz v. Washer, 18 CV 4964 (VB) (the "Washer Action").

      On January 4, 2021, plaintiff commenced the instant action against defendant, Fishkill's superintendent, alleging he retaliated against her for filing the Washer Action.

II.     Factual Background

The parties have submitted briefs, statements of undisputed material facts pursuant to Local Civil Rule 56.1, and affidavits and declarations with exhibits, which together reflect the following factual background.

A.      Employment at Fishkill

Plaintiff worked as a correction officer at Fishkill. Defendant became the superintendent of Fishkill in May 2017 and retired on August 26, 2020. (Doc. #49 ("Def. Decl.") ¶ 2). Before retiring, from June 30 through August 23, 2020, defendant was out using his accrued annual leave and did not have contact with plaintiff or Department of Corrections and Community Supervision ("DOCCS") staff regarding plaintiff. (Id.).

B.      Plaintiff's Grievances

In 2018, plaintiff submitted multiple grievances to defendant alleging Captain Washer sexually harassed her. (Def. Decl. ¶ 18). Defendant forwarded plaintiff's grievances to Michael Washington, Director/ADA Coordinator of the DOCCS Office of Diversity Management ("ODM"), and Mark Miller, Deputy Chief of Special Investigations of the DOCCS Office of Special Investigations ("OSI"), for investigation. (Doc. #52-10). Defendant did not participate in these investigations or conduct an investigation of his own. (Def. Decl. ¶ 19).

Defendant also attests he called Captain Washer into his office and informed him "DOCCS had a zero-tolerance policy concerning the type of conduct alleged by Plaintiff and gave him a verbal direction that if he had been harassing Plaintiff, it needed to stop." (Def. Decl. ¶ 18).

      C.      <u>Plaintiff's Occupational Injury and Workers' Compensation Leave</u>

On February 7, 2019, plaintiff was attacked by an inmate at Fishkill and sustained neck, back, and knee injuries. As a result, the same day, plaintiff went on workers' compensation leave. On May 28, 2019, plaintiff underwent an Independent Medical Examination ("IME") ordered by the New York State Insurance Fund ("NYSIF"). (Doc. #52-2). Dr. Adam Soyer conducted the IME and concluded plaintiff could immediately return to work on light duty and could begin working on full duty on July 10, 2019. (<u>Id.</u>; Doc. #51 ("Ahearn Decl.") ¶ 12).

Rather than return to work immediately, plaintiff appealed DOCCS's determination that she was fit to return to duty to the "National Medical Reviews" ("NMR"), arguing her personal physician reached a different conclusion. (Ahearn Decl. ¶ 13). NMR agreed with plaintiff's personal physician and plaintiff remained on workers' compensation leave. (<u>Id.</u>).

Plaintiff and defendant had no contact with each other from February 7, 2019, through May 20, 2020, when plaintiff and her union representative visited defendant's office. During that visit, plaintiff handed defendant a letter she wrote, addressed to defendant and dated May 20, 2020 (the "May 2020 Letter"), stating her doctors cleared her to return to work on light duty, and requesting that she avoid any contact with, and be supervised by individuals other than, Captain Washer or Deputy Superintendent for Security Stephen Urbanski. (Doc. #52-6; Def. Decl. ¶ 9). Defendant attests he forwarded the May 2020 Letter to DOCCS's Bureau of Labor Relations ("Labor Relations") in Albany. (Def. Decl. ¶ 12). Thereafter, defendant asserts the DOCCS Director of Labor Relations, John Shipley, contacted defendant to discuss plaintiff's request. During that conversation, defendant contends he and Shipley agreed plaintiff's request was better handled by Labor Relations, and defendant would no longer be involved. (<u>Id.</u>)

According to defendant, Labor Relations handled plaintiff's request because plaintiff was on leave from work for more than thirty days. (Def. Decl. ¶ 10). Likewise, Lieutenant Peter Malin, Fishkill's Medical Information Officer ("MIO"), attests that, as MIO, he can approve an employee's return to duty if she has been absent for less than thirty days because of injury or illness, but an employee who has been absent for more than thirty days must obtain approval to return to work from DOCCS's Central Office Personnel in Albany. (Doc. #50 ("Malin Decl.") ¶ 5). Further, Kelly Ahearn, DOCCS Director of Human Resources ("HR"), also attests that a "Superintendent of a correctional facility has no authority to approve or deny Workers Compensation light duty or to have an employee evaluated by" Employee Health Services ("EHS") as "[t]hose determinations lie exclusively with" DOCCS Central Office Personnel. (Ahearn Decl. ¶ 6).

Plaintiff attests that defendant "has provided no such polic[ies] [that a facility superintendent does not decide whether an officer can return to work and that this determination is made by DOCCS Central Office Personnel] nor any reference to such polic[ies]" to plaintiff as part of this action, and that plaintiff "was never advised of any such agency polic[ies] and ha[s] never see[n] any such polic[ies]." (Doc. #56 ("Pl. Decl.") ¶¶ 5–6).

Defendant has also submitted sworn statements describing the typical process for an employee seeking to return to work after being on leave. Ahearn attests DOCCS Central Office Personnel determines whether employees on long-term workers' compensation leave may return on full or light duty "based on a review of medical documentation supplied by the employee from their personal physician or a determination from a state physician, i.e., a physician designated by DOCCS or contracted by" NYSIF to conduct an IME. (Ahearn Decl. ¶ 2). Ahearn further states that, to even consider an employee for light duty, DOCCS requires that she

be less than fifty percent disabled, "able to perform some meaningful work for their full shift" and able to return to full duty within sixty days. (Id. ¶ 5). According to Ahearn, DOCCS Central Office Personnel considers several factors to determine whether to require an employee to undergo an EHS examination, such as:

> length of absence, type of disability, clarity of or discrepancies found in personal medical documentation for fitness for duty and/or as compared to the medical report resulting from an [IME], duties required as a result of the employee's title, prognosis noted on personal medical documentation, recent surgery, or reported upcoming surgery.

(Id. ¶ 4).

Plaintiff's personal physician issued reports to NYSIF on May 4, 2020, and, according to Ahearn, on June 15, 2020. (Doc. #51-1; see Ahearn Decl. ¶ 5). The May 2020 Letter plaintiff handed to defendant included the May 4 report, which determined plaintiff's prognosis was "fair" and stated the physician's opinion that plaintiff was ready to return to light duty on June 1, 2020. (Doc. #51-1). Although the June 15 report is not attached as an exhibit, Ahearn attests it determined plaintiff was sixty-five percent disabled, "making her ineligible for light duty and, moreover, fully supporting DOCCS' requirement that Plaintiff undergo a fitness for duty examination prior to her return as a correction officer." (Ahearn Decl. ¶ 5).

By letter dated June 22, 2020, DOCCS Associate Director of HR Carolyn Franzese notified plaintiff she was scheduled to undergo an EHS examination by a state-retained physician pursuant to Rule 5.9 of the Rules of the Classified Service. (Doc. #56-7; see Ahearn Decl. ¶ 7). Ahearn attests Central Office Personnel made this decision in light of plaintiff's "reported medical diagnosis and even more so length of continuous absence," the "fair" prognosis assigned by plaintiff's personal physician, and the physically demanding duties required of a correction officer. (Ahearn Decl. ¶¶ 4, 8). Further, Ahearn states she "would not have permitted Plaintiff

[to] return to work without an[] evaluation by a state physician, for her own safety and the safety of the facility." (Id. ¶ 8). In addition, Ahearn attests defendant "had no authority to mandate and arrange the EHS evaluation and, in fact, it was directed by Central Office Personnel." (Id. ¶ 11).

Plaintiff describes a different sequence of events leading up to her EHS examination. In her declaration, plaintiff attests that, after receiving Franzese's June 22 letter, she "confronted Fields about this direction, and he stated he had decided to direct me to EHS before allowing me to return to work and he would not provide me any explanation." (Pl. Decl. ¶ 8). However, at her deposition, plaintiff testified that she did not recall any communications with defendant regarding her EHS examination, either before or after it occurred. (Doc. #52-1 ("Pl. Dep. Tr.") at 54–55).

On June 30, 2020, a state-retained physician, Dr. Azad, examined plaintiff. (Doc. #52-8). By letter dated July 16, 2020, EHS Medical Director Dr. Richard Ciulla informed DOCCS HR that, based on Dr. Azad's medical evaluation, plaintiff "is unfit to perform the essential duties of a Correction Officer." (Id.). On July 23, 2020, Ahearn notified plaintiff by certified letter about this determination. (Doc. #52-9; Ahearn Decl. ¶ 10).

Plaintiff eventually returned to work at Fishkill in April 2021.

Plaintiff attests that "[o]n all prior occasions when [she] suffered work-related injuries and was out of work, [she] was permitted to return after providing a note from [her] medical provider and not sent to EHS for medical review." (Pl. Decl. ¶ 13).

Further, plaintiff contends she was treated differently than another correction officer, C.O. Joel Feijoo. (Pl. Decl. ¶ 9). Specifically, she says she "did speak with CO Feijoo who told

6

[her] that he was not required to have an examination by [EHS] before returning to work after a 5–6 month medical leave." (Id.; see Pl. Dep. Tr. at 56–58, 86–89).[1]

Ahearn disputes this and attests C.O. Feijoo was only permitted to return to work after undergoing an IME ordered by NYSIF, which "was conducted by a State contracted doctor who determined that he was fit to work." (Ahearn Decl. ¶ 14).

## DISCUSSION

I.      Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

---

[1]     Citations to "Tr. at _" refer to the page number at the top right-hand corner of each transcript page.

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

7

2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for her.  Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).  Bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Personal Involvement

Defendant argues he is entitled to summary judgment because he was not personally involved in the alleged discriminatory conduct giving rise to plaintiff's claim.

The Court disagrees.

A.      Legal Standard

"The Fourteenth Amendment provides public employees with the right to be free from discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015). "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." Id.

To state a claim under Section 1983, a plaintiff must allege facts showing the defendant's direct and personal involvement in the alleged constitutional deprivation. See Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). A defendant is liable under Section 1983 "only if that defendant took an action that deprived the plaintiff of his or her constitutional rights." Faulk v. N.Y.C. Dep't of Corr., 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014). Importantly, a defendant is not liable if their "failure to act deprived plaintiff" of such rights. Id.

B.      Analysis

The parties dispute whether defendant was personally involved in the allegedly retaliatory conduct of ordering plaintiff to undergo an EHS exam, and refusing to allow plaintiff to return to work once she was medically cleared by her own physician, which all purportedly occurred because plaintiff filed the Washer Action.

Defendant points to the fact that he was on leave from June 30 to August 24, 2020, and then retired, and therefore was not actively working when plaintiff's EHS examination was conducted and when the decision that she was not fit to return to work was made. Defendant

9

also contends that DOCCS Central Office Personnel has sole responsibility to determine if a correction officer may return to duty after a lengthy medical leave and if a DOCCS-appointed EHS examination is required before the officer does so.  Thus, according to defendant, he was not personally involved in the events giving rise to plaintiff's alleged constitutional deprivation.

Plaintiff argues defendant has not provided the purported DOCCS policy requiring DOCCS Central Office Personnel to determine whether plaintiff could return to work or whether she had to undergo an EHS exam.  In addition, plaintiff attests she confronted defendant about the fact that she had to undergo an EHS examination, which she contends defendant arranged, and that he failed to provide her with an explanation of why she had to undergo this examination.  Although this is inconsistent with plaintiff's deposition testimony, she provides some evidence defendant did participate in these decisions.

Generally, the Court cannot credit the testimony of one witness over another, or determine the credibility of any witness, on summary judgment.  Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 725–26 (2d Cir. 2010).  And, this is not an instance in which a witness's testimony contradicts uncontroverted documentary evidence, such that it should be deemed "self-serving" and disregarded.  See Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 656 (2d Cir. 2009) (summary order) (party's self-serving testimony unsupported by admissible evidence insufficient to defeat summary judgment).  Although defendant has proffered some documentary and testimonial evidence supporting his lack of involvement in the decision regarding plaintiff's EHS exam and her denial from returning on light duty, plaintiff's testimony that he was involved suffices, at this stage, to create a triable issue as to whether defendant was involved in these decisions in some capacity.

Accordingly, the Court cannot grant summary judgment to defendant on the basis that he was not personally involved in the alleged constitutional deprivations.

III.     Fourteenth Amendment Retaliation

Defendant argues he is entitled to summary judgment on plaintiff's retaliation claim because plaintiff has failed to raise a genuine issue of material fact that defendant's conduct was the "but-for" cause of the decision that plaintiff had to undergo an EHS examination and could not resume her correction officer duties.

The Court agrees.

A.     Legal Standard

"A district court's evaluation of a retaliation claim based on a violation of the Fourteenth Amendment under Section 1983 mirrors the analysis of such a claim under Title VII." Gonzalez v. City of New York, 845 F. App'x 11, 13–14 (2d Cir. Feb. 9, 2021) (summary order) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 91). Thus, claims for retaliation under Title VII are governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 59 (quoting 42 U.S.C. § 2000e-3(a)).

To establish a prima facie case of retaliation under Section 1983 based on a violation of the Fourteenth Amendment, a plaintiff must show: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action

11

against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013).

To establish an adverse employment action for purposes of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. v. White, 548 U.S. at 68.

To establish a causal connection, at the summary judgment stage, a plaintiff need only "proffer[ ] admissible evidence . . . sufficient to permit a rational finder of fact to infer a retaliatory motive."  Gonzalez v. City of New York, 845 F. App'x at 14.  "[A] plaintiff may show causation either through direct evidence of retaliatory animus or indirectly through evidence that the adverse employment action closely followed the protected activity or other circumstantial evidence including disparate treatment in comparison with other employees."  Id.

Once a plaintiff presents a prima facie case, the defendant bears the burden of "articulating a legitimate, non-retaliatory reason for the adverse employment action."  Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015).  "If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'"  Id. (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)).

This showing of "but-for" causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d

Cir. 2013). A plaintiff may prove that retaliation was the but-for cause of an adverse employment action through "evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment." Id. at 847. However, "a plaintiff cannot merely rationalize, explain, or disagree with an employer's proffered non-retaliatory reasons to survive summary judgment." Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015).

B.   Analysis

Plaintiff claims defendant retaliated against her by purportedly requiring plaintiff to submit to an EHS medical examination and refusing to allow plaintiff to return to work on light duty.[3]

1.   Legitimate, Non-Retaliatory Reason

Even assuming plaintiff has made out a prima facie case of retaliation based on both actions and viewing the evidence in a light most favorable to plaintiff, defendant proffers legitimate, non-retaliatory reasons for each action, and plaintiff has failed to produce sufficient

---

[3]   Although not alleged in her complaint, plaintiff, on summary judgment, argues defendant also retaliated against her by failing adequately to investigate her complaints of sexual harassment in 2018 that predated her filing of the Washer Action. However, that argument also fails as a matter of law. Even if defendant failed properly to investigate plaintiff's sexual harassment complaint—which defendant disputes—such a purported failure is not an adverse employment action. The Second Circuit has held "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint." Fincher v. Deposit. Tr. & Clearing Corp., 604 F.3d at 722; see Williams v. Westchester Med. Ctr. Health Network, 2022 WL 4485298, at *14 n.24 (S.D.N.Y. Sept. 27, 2022) ("[C]ourts in the Second Circuit have consistently held that a failure to investigate a plaintiff's complaints does not constitute an adverse employment action"). Instead, a "failure to investigate can be considered an adverse employment action only if the failure is in retaliation for some separate, protected act by the plaintiff." Brayboy v. O'Dwyer, 633 F. App'x 557, 559 (2d Cir. 2016) (summary order) (affirming summary judgment and finding no prima facie case where plaintiff argued defendant's failure to investigate his discrimination claim "constituted retaliation for bringing that same complaint").

13

evidence from which a reasonable jury could infer those reasons are pretextual and that retaliatory animus was their "but-for" cause.

a. Requiring Plaintiff to Submit to EHS Exam

First, defendant presented evidence of DOCCS's legitimate, non-discriminatory reasons for requiring plaintiff to undergo an EHS examination before she could return to work. According to the sworn statement of DOCCS HR Director Ahearn:

> DOCCS Central Office Personnel determined that EHS examination was required because Plaintiff was absent from duty over fifteen (15) months from Plaintiff's position of NYS Correction Officer, as a result of [plaintiff's] workers' compensation claim, Plaintiff's personal physician indicated the prognosis for improvement was only "fair," and the duties of a Corrections Officer include physically demanding tasks that implicate the safety and security of the facility, and the officer themselves.

(Ahearn Decl. ¶ 4).

b. Refusing to Allow Plaintiff to Return to Work on Light Duty

Defendant also proffers evidence of legitimate, non-retaliatory reasons for refusing to permit plaintiff to return to work on light duty. Ahearn attested that for an employee to be considered for light duty, "the employee must be less than 50% disabled, must be able to perform some meaningful work for their full shift (in this case 8 hours daily) and be able to return to full unrestricted duty within 60 days." (Ahearn Decl. ¶ 5). Here, the reports from plaintiff's physician indicated she was sixty-five percent disabled—which is why she was ineligible for light duty. (Id.). Further, the EHS examination on June 30, 2020, determined plaintiff was unfit to perform the essential duties of a correction officer. (Doc. #52-8). Ahearn informed plaintiff of this on July 23, 2020. (Ahearn Decl. ¶ 10).

        2.    <u>Pretext</u>

Plaintiff's evidence, when construed in plaintiff's favor and considered as a whole, does not support a reasonable inference that defendant's legitimate, non-retaliatory reasons were pretextual.

Here, all of plaintiff's evidence in support of her retaliation claim consists of her testimony that defendant never provided her with a copy of the policies on which he relied in deferring to DOCCS Central Office Personnel, her personal prior experiences returning to work after work-related injuries, and the allegedly disparate treatment she endured when compared with another correction officer, C.O. Feijoo (which defendant disputes).

First, plaintiff's stating that defendant did not provide her with a copy of the relevant DOCCS policy and that plaintiff was unaware of such policy does not create a genuine issue of material fact about whether the policy defendant contends he was acting in accordance with exists where, as here, defendant has submitted unrefuted sworn testimony from several relevant individuals at DOCCS describing the policy.

Second, plaintiff's testimony regarding previous instances when she returned to work without undergoing an EHS examination is undermined by undisputed evidence in the record that, a year earlier, after plaintiff filed the <u>Washer</u> Action, she took medical leave in February 2019 following an assault by an inmate and underwent a medical examination ordered by NYSIF on May 28, 2019, when DOCCS was considering whether she could return to work.  (Doc. #52-2).  That exam found plaintiff could immediately return to work on light duty and work on full duty as of July 10, 2019—a determination plaintiff successfully disputed.  Accordingly, plaintiff's testimony does not raise a triable issue that DOCCS's decision to require her to

15

undergo an EHS examination (and that she could not return to work on light duty) was actually in retaliation for her filing of the Washer Action.

Finally, plaintiff states C.O. Feijoo "told [plaintiff] that he was not required to have an examination by [EHS] before returning to work after a 5–6 month medical leave." (Pl. Decl. ¶ 9). However, "[h]earsay that would not be admissible at trial is . . . not competent evidence on a motion for summary judgment." Gerzhgorin v. Selfhelp Cmty. Servs., Inc., 2022 WL 912523, at *8 (E.D.N.Y. Mar. 29, 2022), aff'd, 2023 WL 249824 (2d Cir. Mar. 13, 2023) (summary order). Feijoo's out-of-court statements to plaintiff, as reported to plaintiff and which plaintiff is offering for the truth of the matter asserted, are inadmissible hearsay and thus may not be considered on summary judgment. See id.; see also Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600–01 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019).

Plaintiff has therefore failed to proffer sufficient evidence from which a reasonable jury could conclude defendant's legitimate, nonretaliatory reasons for requiring her to undergo an EHS examination and refusing to permit her to return to work on light duty were pretextual and that retaliation was the but-for cause of defendant's actions.

Accordingly, summary judgment for defendant is warranted, and plaintiff's retaliation claim must be dismissed.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is directed to terminate the motion (Doc. #47), and close this case.

Dated: June 26, 2023
       White Plains, NY

                SO ORDERED:

                _____
                Vincent L. Briccetti
                United States District Judge